

**LUJAN AGUIGUI & PEREZ** LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Defendant Davina M. Lujan*

**FILED**
DISTRICT COURT OF GUAM

APR - 3 2006

MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

UNITED STATES OF AMERICA,

vs.

DAVINA M. LUJAN,

Defendant.

CRIMINAL CASE NO. CR02-00075

**DEFENDANT DAVINA M. LUJAN'S MOTION TO CONTINUE SENTENCING**

## DEFENDANT DAVINA M. LUJAN'S MOTION TO CONTINUE SENTENCING

DEFENDANT DAVINA. M. LUJAN, by newly retained undersigned counsel, hereby moves to continue sentencing in this case, which is currently scheduled for April 5, 2006.

Defendant Lujan moves to continue her sentencing in order to afford her an opportunity to move to withdraw her guilty plea. The attached Declaration of Davina M. Lujan demonstrates that: (1) she has a substantial basis upon which to seek to withdraw her guilty plea; and (2) she has been very diligent in her efforts to do so.

Davina Lujan's Declaration raises serious questions whether her plea was: (1) knowing and voluntary; (2) made with close, or even effective, assistance of counsel; and (3) in deprivation of her right to counsel. Defendant Lujan's first attorney, Curtis Van De

ORIGINAL

Veld, advised her to enter a guilty plea only one day after her arrest, without reviewing any discovery. Attorney Van De Veld provided this advice to defendant Lujan knowing that defendant Lujan had very little sleep and nutrition the night before, during which time she was subjected to protracted investigation and the execution of search warrants at her home and office. Attorney Van De Veld did not provide defendant Lujan sufficient consultation time before she entered her guilty plea, and he did not fully inform her of the constitutional rights that she waived by entering her guilty plea, including her rights to grand jury indictment and to discovery.

In addition, although Ms. Lujan was placed under arrest and taken into custody in the late afternoon on November 7, 2002, she was not afforded an opportunity to contact an attorney until the late evening, despite repeated requests for counsel.

Moreover, when attorney Van De Veld arrived at the Federal Building to meet with Ms. Lujan shortly before midnight, Ms. Lujan smelled alcohol on attorney Van De Veld's breath.

In addition, during the course of attorney Van De Veld's representation of Defendant Lujan, attorney Van De Veld's availability was limited as a result of the death of his mother.[1]

---

[1]Defendant Lujan informed undersigned counsel that during their initial contact, attorney Van De Veld informed defendant Lujan that he had been off island and that his mother's death was imminent. Defendant Lujan further informed undersigned counsel that shortly thereafter, attorney Van De Veld's mother did pass away, and as a result, attorney Van De Veld was unavailable for several weeks.

1    Within two months after defendant Lujan entered her guilty plea, she retained

2 attorney Howard Trapp for the purpose of moving to withdraw her guilty plea and

3 contesting the charge against her. Attorney Trapp consistently assured defendant Lujan

4 that he would pursue this course of action for her, and he also consistently provided

5 excuses for his delay in doing so. It was only within the past weeks that attorney Trapp

6 informed defendant Lujan that he would not file a motion to withdraw her guilty plea, or

7 even to continue her sentencing so that she could seek assistance of another attorney in

8 order to do so.

9    Accordingly, since defendant Lujan has established: (1) strong grounds for the

10 requested continuance; (2) excusable delay; and (3) lack of burden on the court,[2]

11 defendant Lujan respectfully requests a continuance of her sentencing so that she may be

12 afforded an opportunity to move to withdraw her guilty plea.

13    DATED:    April 3, 2006, Hagatna, Guam.

Respectfully submitted,

DAVID LUJAN, ESQ.
Attorney for Defendant
DAVINA M. LUJAN

---

[2]Defendant Lujan entered her guilty plea within one week after her arrest. Minimal
judicial resources have been expended on this case.

# DECLARATION OF DAVINA M. LUJAN

I, Davina Lujan, declare as follows:

1. I was arrested in the late afternoon on November 7, 2002 and taken into custody.

2. I accompanied law enforcement officers while search warrants were executed at my home and my office.

3. I was interrogated for hours before, during and after these searches, into the early morning hours of November 8, 2002.

4. I was not provided dinner during this interrogation.

5. I was not afforded an opportunity to consult with counsel until the late evening on November 7, 2002, despite repeated requests.

6. When I finally was afforded an opportunity to contact an attorney that evening, I contacted attorney Curtis Van De Veld. When Mr. Van De Veld arrived at the Federal Building, I smelled alcohol on his breath.

7. During the early morning hours of November 8, 2002, the government transported me to a hotel room where I received a short amount sleep while I remained in custody.

8. After sleeping for several hours, the government transported me back to the Federal Building.

9. Mr. Van De Veld met briefly with the government outside my presence

and then informed me that the government had offered me a plea agreement. Mr. Van De Veld advised me to admit to certain conduct which resulted in the information filed against me. Mr. Van De Veld advised me to enter a guilty plea.

10. Mr. Van De Veld reviewed the plea agreement with me in the presence of Assistant United States Attorney Joseph Wilson and an agent from the United States Drug Enforcement Administration.

11. On the afternoon of November 8, 2002, we informed United States District Judge Munson by telephone that I would be entering a guilty plea, and my court date was scheduled for November 13, 2002.

12. I had only one private consultation with Mr. Van De Veld after November 8, 2002 and before my court appearance. During that time, I expressed concern to Mr. Van De Veld because on November 8, 2002, I did not realize that I would be pleading guilty to a felony. Mr. Van De Veld once again advised me to plead guilty, but he also agreed to consult with me one more time before my court appearance.

13. I arrived at Mr. Van De Veld's office at the appointed time for the second consultation, but Mr. Van De Veld was not available. I was not afforded an opportunity for this second consultation before my court appearance.

14. Mr. Van De Veld did not fully advise me of my rights and options

2

concerning my interview with a United States probation officer. Mr. Trapp assured me that proceeding with this interview would not obligate me to proceed to sentencing, and that such interview would not limit my option to move to withdraw my guilty plea.

21. During the course of our attorney-client relationship, Mr. Trapp provided me excuses for his delay in moving to withdraw my guilty plea. For example, Mr. Trapp informed me that but for the removal of United States Attorney Fred Black, it is likely that the prosecution of me would have been terminated without a conviction.

22. On about March 8 and 15, 2006, Mr. Trapp informed me that he would ask the government to stipulate to a two month continuance of my sentence while we pursued avenues for obtaining a government investigation into the removal of United States Attorney Fred Black, and its impact on my case.

23. In an abrupt turn of events, Mr. Trapp recently informed me that he will not move to withdraw my guilty plea or seek a continuance of my sentence.

24. As a result, I contacted attorney David Lujan who referred me to attorney Michael Jay Green in Honolulu, Hawaii. On March 27, 2006, which was a holiday in Hawaii (Prince Kuhio Day), I began faxing documents to Mr. Green concerning my case. I also made arrangements to fly from Guam to Hawaii to

4

meet with Mr. Green.

25. I met with Mr. Green for many hours on March 31 and April 1, 2006. Based on Mr. Green's review of available documents and our two-day consultation, I still wish to move to withdraw my guilty plea.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED:     April 2, 2006.

_____
Davina M. Lujan

meet with Mr. Green.

    25. I met with Mr. Green for many hours on March 31 and April 1, 2006.

Based on Mr. Green's review of available documents and our two-day

consultation, I still wish to move to withdraw my guilty plea.

    I declare under penalty of perjury that the foregoing is true and correct to

the best of my knowledge and belief.

    DATED:    April 2, 2006.

                                                 Davina M. Lujan

EXHIBIT 1

**DAVINA M. LUJAN, MD**
275G Farenholt Avenue, Suite 258
Tamuning, GU 96913
(671)632-5773; Facsimile (671)632-1322

Howard Trapp, Esq.                                    September 1, 200?

Subject:      **Schedule for September 2003 Status Hearing**

Dear Howard,

I am writing to followup on the Status Hearing for my case that is scheduled for his month. I know that you have stated that it will be continued, but I just wish to verify this is so, ɪ nd when my status hearing will be rescheduled.

I did not receive a call from your office this past week and I am very anxious r ʞ what you think I should do. I was stunned at our last meeting when you spoke of my sentencing. ʹ ʹou also stated that you felt that I was guilty. This leads me to believe that you do not intend to sɛ ʞk a legal basis for the plea to be set aside. This is such a complete departure from what you have lɛ ʃ me to believe the outcome of my case would be, i.e. dismissal.

When we first spoke of the charges and the circumstances related to the charge ;, you felt that they were not criminal, nor unusual. You related to me a story of a Federal judge fɪ ɔm off-island who needed a prescription while he was visiting: A colleague in the Legislature aɪ commodated your request to write a prescription. You also related to me how then U.S. Attorney Fɪ ed Black confided to you that he would not have pursued this case if not for the involvement of the ( overnor. You also allayed my fears that your personal relationship with Attorney Black would neith ɪr bias nor interfere with your representation of me. I told you that I felt I was rushed and was not f ɪlly advised re: the plea - I just could not think of anything that I have knowledge of or participated in that was illegal. But rather than trying to put the plea aside at that time, you advised that I shouɪ ʃ proceed with the terms of the plea and cooperate fully with the US Attorney and that ultimatɛ y it would not be unreasonable to expect a dismissal. I have done all that.

Howard, I would like you to speak to the new US Attorney, Leonard Rapadas, ɪ s it appears that Fred Black does not wish to facilitate a dismissal. I do not know Leonard Rapɪ ʃas personally and cannot think of a conflict. The way you describe him, you characterize hin as a figurehead, but I wish to believe that he is more than that.

Howard, what can you do? I continue to pray that past wrongs may be made riɪ ht - that true justice prevails.

Respectfully yours,

*EXHIBIT 2*

**DAVINA M. LUJAN, MD**
275G Farenholt Avenue, Suite 258
Tamuning, GU 96913
(671)632-2477; Facsimile (671) 632-1322

January 15, 2004

Howard Trapp, Esq.
200 Saylor Building
139 Chalan Santo Papa
Hagatna, GU 96910
(671)477-7000; Facsimile (671)477-2040

**SUBJECT:      Proceeding With Dismissal of Federal Case**

Dear Attorney Trapp,

I must once again write to you about our conversation today. I was quite surprised when you said
vehemently that "you would just not do it" in reference to my request to make the notions to dismiss
my case and withdraw my plea agreement. Although you feel it is destructive behavior to proceed
in this fashion, I can only repeat that it is unclear why it cannot be done. I reflected on what you said
and am further bothered by your change in attitude. Originally when I came to you it was for you
to review my situation and advise me. At that time the goal was to do everything to allow me to
continue practicing medicine. This marks my fifteenth day without a medical license. Today, you
state your goal is for me to have a license without a conviction. I am living my life already
convicted.

You admit that it was not your expectation that the case would proceed past the time of my medical
license renewal. Is it unreasonable to expect that a change in course is now in order?

I am angry that you would comment on my "situational depression" and that I am in a " state of
denial". You ask me to just accept the fact that I will not be able to practice medicine for up to a
year?! You are certain that if I maintain this passive role that you will be able to pull the "rabbit out
of the hat". The time for the rabbit to be pulled is past. I have paid too dear a price.

I am prejudiced by the status quo and your inaction. As long as this is allowed to continue, I will
suffer financially with irreversible damage to my reputation. I just do not understand how you seem
unwilling or unable to see the need to protect my interests. I do not care if I get the U.S. Attorney
angry at me. Clearly they do not have my best interests in mind. But as my legal counsel my
interests should be foremost in your mind.

I have been more than cooperative, as you advised, and now I am to suffer the consequences for cooperating? Why did I bother cooperating in the first place? I have consistently stated that I would have preferred to face the charges before me then to be besmirched by an unrelated association to government corruption. I cannot believe that "no jury would acquit me". Or yet again, that "the judge will not consider my motions favorably?". What happened to the story about the Federal judge who came to Guam when you were in the Legislature and needed a prescription which was written by your fellow senator who was a physician? He was not examined, nor was he a patient. What I have done is not outside the norms of the community. What is the case law for others in my situation?

Furthermore, I find it strange that you refuse to list out in writing my options? You have been emotionally supportive but it is your professional legal expertise that I retained. With 40 years experience there is probably nobody better than you in knowing my options. The question should not be put before me to present the reasons for a motion to dismiss or withdraw the plea. I do not have nor pretend to have a legal background. If your position is the right one, and you are so convinced, then why are you so uncomfortable about putting this in writing? I want to know why as my lawyer, you refuse to respond in writing to my request? I cannot seek a second or third opinion when I have not even received the first opinion.

You have been so adamant and insistent on keeping me out of jail. My life is already a living hell how much worse can jail be? I am a sitting duck unable to defend myself. That is why I turned to you. Let's start the defense. **I wish to immediately proceed with the motions to dismiss my case and withdraw my plea agreement.** My timeline is just as important, if not more important, as your other clients and their deadlines should not compromise my defense.

I look forward to having the motions to dismiss my case and withdraw my plea agreement. I remain hopeful. Should sentencing be ultimately what I must face, so be it.

Sincerely,

DAVINA M. LUJAN, MD

EXHIBIT 3

DAVINA M. LUJAN, MD
275G Farenholt Avenue, Suite 258
Tamuning, GU 96913
(671)632-2477; Facsimile 632-1322

February 8, 2004

Subject:      **Status of Motion to Withdraw or Dismiss Plea Agreement**

Dear Attorney Trapp:

On January 15th, I wrote to you requesting that you proceed immediately with a motion to withdraw or dismiss my plea agreement for conspiracy to distribute percocet. As you saw on January 21st, at the regularly scheduled meeting for the Guam Board of Medical Examiners (GBME), I continue to face serious consequences that directly arise from the existing plea agreement. The day after the GBME meeting, you called and were concerned about the status of Dr. Jerone Landstrom on the GBME board, rather than my situation as your client. Is he also a client and do you have a conflict?

When we last spoke on January 30th, you informed me that the US Attorney would be willing to enter a stipulation that would allow me to share the redacted information with the GBME. This does not make sense, as it would violate federal HIPAA regulations. I am further concerned that this would only "trap" me further with the plea agreement, which I believe I did not enter into knowingly.

I still await your response in writing for my request for a motion to withdraw or dismiss my plea agreement. What is the status of your request for the transcripts of my appearance before the grand jury? You ask me to state on what grounds you should seek dismissal or withdrawal. Of course, I defer specifically to you as my counsel for advice to answer that question. I reminded you of the issue of ineffective counsel and you said that you would explore this issue. Now it is a week later, and still no word from you.

It has been well over a year since you assumed responsibility for my case. When I first came to you, you were quite encouraging with the possibilities of changing my plea. However, you advised that I stay the course and within the year my plea would be dismissed. Needless to say, this did not happen. I have been subject to relentless speculation over this year, which has been ruinous to my reputation. I have lost my license to practice medicine. My ability to make a livelihood has been destroyed and I now must leave Guam. I desperately need your legal advice and expertise to right this wrong.

I am increasingly distressed and dismayed by your avoidance of a written response to my requests. As you are so confident that seeking the motions would be disastrous, then there should be no hesitation to explain this in writing.

Again, I await your written response.

Sincerely,

DAVINA M. LUJAN

EXHIBIT 4

# Plea Bargains,
## Breach/Withdrawal §515

**Supreme Court holds that prosecutor's arguing inconsistent theories in accomplices' cases did not void guilty plea but may affect death penalty. (515)** Defendant and his accomplice murdered a man and shot the man's wife. Defendant admitted killing the husband, but denied shooting the wife. At the penalty phase of his capital trial, the prosecutor argued that defendant had shot the wife and that he was the principal offender in the murder. Defendant received the death penalty. At the accomplice's later trial, the same prosecutor, relying on new evidence, argued that the accomplice had shot the wife. When defendant moved to withdraw his guilty plea or vacate his death sentence, the prosecutor again argued that defendant was the shooter. The Supreme Court held that the prosecutor's inconsistent approach in defendant's and his accomplice's cases did not require voiding defendant's guilty plea because he had not shown how the inconsistent arguments affected defendant's decision to plead guilty. The Court held that the inconsistent theories may have affected defendant's death sentence, and it remanded for further consideration of that issue. *Bradshaw v. Stumpf*, 545 U.S. __, 125 S.Ct. 2398 (2005).

(1) **Supreme Court holds relief from deportation remains available for aliens who pled guilty under plea agreements before 1996. (515)** In a 5-4 opinion written by Justice Stevens, the Supreme Court held that discretionary relief from deportation under INA § 212(c) remains available for aliens whose prior convictions were obtained through plea agreements before the 1996 amendments in AEDPA and IIRIRA. Even though deportation is not punishment for ex post facto purposes, the elimination of § 212(c) relief attached new disability to past transactions, and defendants who pled guilty pursuant to a plea agreement prior to the 1996 changes in the law may have reasonably relied on the continued availability of discretionary relief. Thus, the majority held that it would be contrary to considerations of fair notice, reasonable reliance, and settled expectations to hold that IIRIRA deprived such aliens of any possibility of discretionary relief. Justice Scalia dissented, joined by Chief Justice Rehnquist, and Justice Thomas and in part by Justice O'Connor. *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271 (2001).

(2) **Supreme Court requires "fair and just reason" to withdraw plea even f court defers accepting plea agreement. (515)** In a unanimous opinion written by Chief Justice Rehnquist, the Supreme Court reversed the Ninth Circuit's ruling in *U.S. v. Hyde*, 92 F.3d 779, 781 (1996), and held that a defendant may not withdraw his guilty plea unless he shows a "fair and just reason" under Rule 32(e), even if the district court defers acceptance of the plea agreement until sentencing. The Supreme Court found no support in either Rule 11, or Rule 32, 1 ed. R. Crim. P., to support the Ninth Circuit's ruling that a defendant had an absolute right to withdraw his guilty plea before the district court accepted the plea agreement. The court said the Ninth Circuit's holding was contradicted by the very language of the rules, and "would degrade the otherwise serious act of pleading guilty to something akin to a move in a game of chess." Under the rules, defendant must show "good cause" even if the district court has not yet accepted the plea agreement. *U.S. v. Hyde*, __ U.S. __, 117 S.Ct. 1630 (1997). *? contracts due // : p. 60*

**Supreme Court says defendant may waive confidentiality of statements made in plea**

discussions. **(515)** Reversing the Ninth Circuit, Justice Thomas, writing for the majority, held a defendant may waive the confidentiality of statements made in plea discussions (Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(5)). Since the defendant knowingly and intelligently waived the confidentiality of the statements, they were properly introduced as prior inconsistent statements to impeach him at trial. Justices Ginsburg, O'Connor and Breyer concurred, but noted that using such statements in the case in chief might inhibit plea bargaining. Justices Souter and Stevens dissented, opining Congress never intended to make the confidentiality of plea discussions waivable. *U.S. v. Mezzanatto,* 513 U.S. 196 (1995).

**Defendant's trial and death sentence after breach of plea agreement did not violate double jeopardy. (515)** In return for being allowed to plead guilty to second-degree murder, defendant agreed to testify "in any court . . . against any and all parties involved in the murder of Don Bolles." The written agreement provided that if he refused to testify at any time, the agreement was null and void. Defendant testified at the trial of two individuals. They were convicted of first degree murder, but the Arizona Supreme Court reversed and remanded for retrial. Defendant refused to testify at the retrial, and the State treated this as a breach of the plea agreement. Defendant was convicted of first degree murder and sentenced to death. The Ninth Circuit reversed, holding that the reprosecution after the guilty plea constituted double jeopardy. *Adamson v. Ricketts,* 789 F.2d 722 (9th Cir. 1986) (*en banc*). But in a 5-4 opinion written by Justice White, the Supreme Court reversed the Ninth Circuit, finding no double jeopardy violation in light of breach of the plea agreement. *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680 (1987).

*U.S. v. Benchimol,* 738 F.2d 1001 (9th Cir. 1984) in Volume 1, was reversed. 471 U.S. 453 (1985).

**Plea bargain, withdrawal of offer. (515)** A state defendant's acceptance of a plea bargain proposed by the prosecution did not create a constitutional right to have the bargain specifically enforced. Nor can the bargain, which the prosecution withdrew before a plea could be entered, be used as the basis for an attack on a later guilty plea pursuant to a bargain less favorable to the defendant, even if the prosecution was negligent or otherwise culpable in making and then withdrawing the offer. *Maybry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543 (1984).

**Double jeopardy, plea to lesser offense. (515)** The Fifth Amendment's Double Jeopardy Clause does not prohibit a state from continuing a prosecution that was halted by the trial court's acceptance, over the state's objection, of the defendant's guilty plea to lesser included or "allied" offenses stemming from the same incident. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536 (1984).

**Counsel's mischaracterization of potential sentence provided reason to withdraw plea before sentencing. (515)** Defendant, charged with distributing narcotics, pleaded guilty pursuant to a plea agreement that limited his maximum sentence to eight years. At the plea colloquy, the government stated that defendant was subject to a maximum sentence of eight years and that his guideline range was well in excess of eight years. Before sentencing, defendant obtained new counsel and moved to withdraw his plea on the ground that his prior attorney had told him that he would receive probation if he pleaded guilty. After an evidentiary hearing, the district court found



that defendant's prior attorney had told him that his potential sentence was probation to eight years and denied the motion to withdraw the plea. Northern California District Judge Breyer, joined by Judge Graber, held that because there was little or no possibility that defendant would be sentenced to probation, counsel's advice was a "gross mischaracterization" of the sentence he would receive and provided a fair and just reason to withdraw his plea. Judge Callahan dissented. *U.S. v. Davis*, 410 F.3d 1122 (9th Cir. 2005).



**Counsel's erroneous advice may support pre-sentence withdrawal of plea even if it did not cause plea. (515)** After pleading guilty but prior to sentencing, defendant moved to withdraw his plea, arguing that his counsel's erroneous advice as to the sentence he would receive caused him to plead guilty. The district court found that counsel had given erroneous advice but that defendant had not shown that he would not have pleaded guilty if he had received correct advice. Northern California District Judge Breyer, joined by Judge Graber, held that counsel's erroneous advice may constitute a fair and just reason for withdrawing a plea even if defendant does not prove that he would not have pleaded guilty but for the erroneous advice. Judge Callahan dissented. *U.S. v. Davis*, 410 F.3d 1122 (9th Cir. 2005).

**Government did not breach plea agreement to recommend sentence under mandatory minimum if defendant qualified for safety valve. (515)** Defendant, who pleaded guilty to drug trafficking, was subject to a mandatory minimum sentence. In a plea agreement the government agreed to recommend a sentence within the Sentencing Guidelines range that would have been applicable absent the mandatory minimum if the district court found that defendant qualified for a safety valve sentence. At sentencing, the government told the court that defendant had not been truthful in his debriefing sessions with the government. The district court agreed and declined to impose a sentence below the mandatory minimum. Judge Noonan, joined by Judges Thomas and Fisher, held that the government had not breached the plea agreement. *U.S. v. Cardenas*, 405 F.3d 1046 (9th Cir. 2005).



**Newly discovered evidence is basis for withdrawing guilty plea. (515** Police found methamphetamine and a scale in the upstairs portion of a house and three firearms in the downstairs portion. The house's owner told police that she lived in upstairs and that defendant lived downstairs. Defendant pleaded guilty to one count of manufacturing methamphetamine and one count of possession of a firearm in furtherance of a drug trafficking crime in exchange for the government's agreement to drop two other firearms charges and a sentence of 120 months. At his change-of-plea colloquy, defendant stated that he did not concede his guilt but that he was entering the plea only to limit his maximum sentence. When asked to confirm the government's statement of facts, he stated that he agreed "for purposes of this plea." Seven months after entering his plea, but before he was sentenced, defendant moved to withdraw his plea because he had found a witness who would testify that he did not live at the house but merely visited occasionally and that another man lived there. The witness also said that two of the seized firearms did not belong to defendant. Judge B. Fletcher, joined by Judges McKeown and Gould, held that the newly discovered evidence that defendant presented constituted a fair and just reason for withdrawing his plea because it "could have at least plausibly motivated a reasonable person" in defendant's position not to plead guilty. *U.S. v. (Edward) Garcia*, 401 F.3d 1008 (9th Cir. 2005).

**Intervening Supreme Court decision is fair and just reason for illegal reentry defendant to withdraw plea. (515)** Under Federal Rule of Criminal Procedure 11(d)(2) (B), a defendant may withdraw his guilty plea prior to sentencing for a "fair and just reason." Defendant, who pleaded guilty to illegal reentry after deportation (8 U.S.C. § 1326), moved to withdraw his plea on the ground that *INS v. St. Cyr*, 533 U.S. 289 (2001), which the Supreme Court issued after he entered his plea, rendered his prior deportation illegal and provided a ground for him to move to dismiss the indictment. Northern California District Judge Breyer, joined by Judge McKeown and Bybee, held that an intervening Supreme Court decision may provide a "fair and just reason" for a defendant to withdraw a plea. *U.S. v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004).

**En banc court says court that rejects plea agreement may not unilaterally vacate plea and set case for trial. (515)** Defendant, charged with first-degree murder, entered into an agreement that allowed him to plead guilty to second-degree murder. The agreement provided that defendant could withdraw from the agreement if the court imposed any sentence other than 132 months' imprisonment. At the plea colloquy, the court accepted defendant's plea, but deferred acceptance of the plea agreement. At sentencing, the court announced that it would not accept the plea agreement because the stipulated sentence was too low. Defendant then sought to withdraw his plea. At a hearing, the court stated that it had never accepted defendant's plea and rejected the parties' effort to have defendant enter into a new plea. It then set the case for trial on the first-degree murder charges. In response to defendant's petition for mandamus, the en banc court, in a decision by Judge Wardlaw, held that although the court was free to reject the plea agreement after accepting the plea, the court may not unilaterally decide to reject the plea and instead must give defendant the options (1) to stand by his plea and accept the sentence imposed by the district court; (2) withdraw his plea and attempt to negotiate a new plea that the court will accept; or (3) proceed to trial. The court also found that the district court improperly intruded on the government's charging power by vacating defendant's plea and reinstating the first-degree murder indictment. Judge Trott concurred and dissented; Judge Kleinfeld dissented. *In re Ellis*, 356 F.3d 1198 (9th Cir. 2004) (en banc).

**Defendant waived challenge to guilty plea by failing to raise it on appeal or in earlier collateral attack. (515)** Defendant pleaded guilty to bank fraud, mail fraud, and perjury. On appeal in a collateral attack, he succeeded in having his bank fraud conviction vacated on grounds of ineffective assistance of counsel. On remand, he sought to withdraw from his guilty plea on the mail fraud and perjury counts, arguing that he had only pleaded guilty to those counts because he was pleading guilty to bank fraud. Judge Canby, joined by Judges Kleinfeld and Rawlinson, held that defendant had waived his challenge to his guilty plea on the mail fraud and perjury counts by failing to raise it in his direct appeal or earlier collateral challenge. *U.S. v. Radmall*, 340 F.3d 798 (9th Cir. 2003).

**Specific performance required for plea agreement provision requiring early release. (515)** Defendant entered into an oral agreement to plead guilty to second-degree murder in return for a 15-year sentence. When stating the terms of the agreement, the prosecutor said that if defendant behaved in prison, she would be paroled after serving half of the 15 years. The court sentenced defendant to 15 years to life. Defendant did not engage in prison misconduct, but she remained in

prison 17 years after the plea. Judge B. Fletcher, joined by Judge Browning, held that the prosecutor's promise that defendant would be released after serving half of her sentence was a material part of the plea agreement and that defendant was entitled to specific performance of the agreement and immediate release. Judge Silverman dissented. *Brown v. Poole*, 33 'F.3d 1155 (9th Cir. 2003).

**Alleged inability to speak English is not basis for withdrawing plea.** (515 At defendant's guilty plea colloquy, the district court questioned defendant at length to ensure that he understood the proceeding. Although defendant stated at one point that he was not sure h understood the plea, the court followed up with substantial questioning to explain it to him. Two years later, defendant moved to withdraw his plea on the ground that he did not speak Englis well enough to understand the proceedings. After a hearing at which defendant's former counsel and the probation officer both testified to defendant's English proficiency, the court denied the motion. Judge Tashima, joined by Chief Judge Schroeder and Judge Goodwin, affirmed, finding that defendant had failed to establish that his alleged inability to speak English was a fair and just reason for withdrawing his plea. *U.S. v. Nostratis*, 321 F.3d 1206 (9th Cir. 2003).

**Defendant validly waived right to bar trial use of statements made in plea negotiations.** (515) Before engaging in plea negotiations, defendant agreed that the government could use statements he made during negotiations in cross-examination or rebuttal if the negotiations failed. Defendant made inculpatory admissions during plea negotiations, but was unable to reach agreement with the government and proceeded to trial. In its rebuttal case, the government introduced several of defendant's statements during plea negotiations. Judge D. Nelson, joined by Judge T. Nelson and Northern California District Judge Schwarzer, held that defendant validly waived his right under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) to bar admission of any statement made during plea negotiations. The court further held that because defendant had presented a defense at trial inconsistent with his prior statements, the government had the right to introduce the statements and that introduction of the statements had not deprived defendant of his right to present a defense. *U.S. v. Rebbe*, 314 F.3d 402 (9th Cir. 2002).

**Court may not sever cooperation provision from binding plea agreement.** (15) Defendants entered guilty pleas pursuant to plea agreements under Federal Rule of Criminal Procedure 11(e)(1)(C) requiring their cooperation with the government in return for the government's agreement to move for a downward departure to a specified sentence. Both agreements provided that if defendants did not receive the specified sentence, they could vacate the plea agreement. Each agreement also stated, however, that if defendant violated any term of the agreement, defendant had no right to withdraw from the agreement. Both defendants refused to cooperate and thus breached their plea agreements; they then moved to withdraw their guilty pleas. The district court held that the agreements' provision requiring the government to move for a downward departure in return for cooperation was severable from the remainder of the agreement. It therefore denied the motions to withdraw and sentenced defendants to terms longer than they would have received if they had fulfilled the agreement. Montana District Judge Molloy, joined by Judges Reinhardt and Fisher, reversed, holding that because the agreements were entered under Rule 11(e)(1)(C), the district court's only options were to accept the plea

agreements and sentence defendants accordingly or reject the agreement and allow defendants to withdraw their pleas. *U.S. v. Reyes*, 313 F.3d 1152 (9th Cir. 2002).

**En banc court to decide whether district court may vacate guilty plea when it rejects plea bargain. (515)** Defendant was charged with first-degree murder, but agreed to plead guilty to second-degree murder pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(e)(1)(C). The agreement provided that if the district court imposed a sentence other than 132 months' imprisonment, either party could withdraw from the agreement. After a plea colloquy, the district court found the plea knowing and voluntary. At sentencing, however, the district court rejected the plea bargain as too lenient, vacated the plea, and set the case for trial on the first-degree murder charge. Defendant filed a petition for mandamus seeking to force the court to accept the plea. In *In re Ellis*, 294 F.3d 1094 (9th Cir. 2002), a Ninth Circuit panel denied the petition, holding that acceptance of a plea after a plea colloquy is necessarily conditioned on the court's review of the presentence report. On December 5, 2002, the court granted en banc review of this decision. *In re Ellis*, 313 F.3d 1094 (9th Cir. 2002) (granting en banc review).

**Government breached plea agreement by arguing facts inconsistent with agreed sentencing recommendation. (515)** Defendant agreed to plead guilty to drug offenses in a plea agreement that provided (1) that the government would recommend a sentence below the mandatory minimum sentence if defendant met the requirements for the "safety valve" in USSG §5C1.2, and (2) that the parties could "recommend and argue for adjustments" not addressed in the agreement. The government argued to the probation officer and the court that defendant was the organizer or leader of the drug organization. The district court agreed, and that finding rendered defendant ineligible for the safety valve. Judge Berzon, joined by Judge Wardlaw and Eastern California District Judge Ishii, held that the plea agreement contemplated that the government would remain neutral with respect to matters that would affect the safety valve determination and that the government breached the plea agreement by arguing for a fact that would make it impossible for defendant to qualify for the safety valve. *U.S. v. Franco-Lopez*, 312 F.3d 984 (9th Cir. 2002).

**Government did not breach plea agreement provision limiting information it could provide to probation office. (515)** Defendant pleaded guilty to a drug offense based on his participation in transporting a load of marijuana across the border. His plea agreement provided that the government would "forego recommending inclusion of facts for relevant conduct purposes" that concerned any marijuana loads that defendant facilitated after the one underlying the offense of conviction. The government provided information to the probation officer concerning drug offenses that defendant committed after the offense of conviction, but it argued against using that information as relevant conduct in fixing defendant's offense level. Judge Berzon, joined by Judge Wardlaw and Eastern California District Judge Ishii, held that because the government had not urged that the post-offense conduct be used as relevant conduct, it did not breach the plea agreement. *U.S. v. Franco-Lopez*, 312 F.3d 984 (9th Cir. 2002).

**Defendant may not file a post-conviction motion to enforce a plea agreement. (515)** Defendant filed a motion in the Central District of California to enforce a plea agreement that he entered in that district. He claimed that his later prosecution in Iowa federal court violated the terms of the agreement. The district court denied the motion both on the ground that it should

have been brought in Iowa and on the merits. Judge Silverman, joined by Judges Alarcon and Rawlinson, held that if considered as a petition under 28 U.S.C. § 2255, the motion was either untimely or should have been brought in Iowa. The court also held that a defendant may not file a post-conviction motion to enforce a plea agreement and instead must attack the conviction through a § 2255 petition. *U.S. v. Monreal*, 301 F.3d 1127 (9th Cir. 2002).

**Prosecutor's ambiguous statement at hearing months before sentencing did not violate plea agreement. (515)** A plea agreement required defendant's cooperation in exchange for the government's agreement to recommend the low end of the guideline range. At a hearing seven months before sentencing, the court expressed impatience with the delay in sentencing defendant, noted that defendant would be a more valuable witness once he had been sentenced, and said that it was unlikely to impose a sentence below the high end of the range. The prosecutor replied that the government's position "is not necessarily inconsistent with the Court's with regards to the defendant's ultimate sentencing." At sentencing, the government recommended the low end of the sentencing range. Judge Paez, joined by Judge Fisher and Southern California District Judge Whelan, held that the prosecutor's ambiguous statement at the earlier hearing was not an attempt to influence the district court to impose a sentence other than one at the low end of the range. *U.S. v. Quach*, 302 F.3d 1096 (9th Cir., 2002).

**Government's failure to file § 5K1.1 motion relied on misinterpretation of plea agreement. (515)** Defendant's plea agreement required the government to file a substantial assistance downward departure motion if defendant was the "but for" cause of the apprehension of a fugitive codefendant. Defendant provided assistance in apprehending the codefendant, but at sentencing the government declined to file a departure motion because defendant had not completed his cooperation. Judge Paez, joined by Judge Fisher and Southern California District Judge Whelan, held that the government misinterpreted the plea agreement by requiring defendant to complete his cooperation before receiving a downward departure motion. The court remanded so that the government could consider whether defendant had complied with the plea agreement. *U.S. v. Quach*, 302 F.3d 1096 (9th Cir., 2002).

**Prosecutor's failure to recommend concurrent sentences violated plea agreement. (515)** Defendant agreed to plead guilty to two counts of robbery with a deadly weapon under Nevada statutes that require an enhanced sentence for the use of the deadly weapon. The parties agreed that the sentences for the robberies would be concurrent, and that the sentences for use of a deadly weapon would also be concurrent, but consecutive to the robbery sentences. The presentence report recommended consecutive sentences on all four charges, however, and at sentencing, the prosecutor concurred in the report's recommendation. The court imposed four consecutive sentences. The Nevada state courts rejected defendant's claim that he was entitled to withdraw his guilty plea, finding that it was "clear from the record" that the prosecutor had not argued for consecutive sentences. On habeas review, Judge Kleinfeld, joined by Judges Hawkins and Tallman, found no evidence to support the Nevada courts' conclusion. Instead, the court held that the prosecutor had clearly violated the plea agreement. Because defendant received a sentence greater than the prosecution agreed to recommend, the court held that he must be resentenced or granted other appropriate relief. *Gunn v. Ignacio*, 263 F.3d 965 (9th Cir. 2001).

**Government's sentence recommendation did not breach plea agreement. (515)** The agreement was predicated on the assumption that defendant's criminal history would be Category I, but said it was based on information that was then known and could change based on investigation by the probation officer. The probation officer found defendant's criminal history category was III. Therefore, contrary to the agreement, the government did not recommend home detention because defendant was no longer eligible for it. At sentencing, defense counsel acknowledged that "the government is certainly within their right to agree with the recommendation of the presentence investigation report." However immediately after sentencing, defendant moved to withdraw the plea, arguing for the first time that the government breached the plea agreement. On appeal, the Ninth Circuit found no breach, noting that the plea agreement conditioned the government's recommendation on defendant's eligibility for home detention. The panel also rejected defendant's argument based on *U.S. v. Nelson*, 222 F.3d 545 (9th Cir. 2000) that the government had an obligation not to recommend custody at sentencing, despite the changed circumstances. *U.S. v. Trapp*, 257 F.3d 1053 (9th Cir. 2001).

**En banc court rejects "manifest injustice" test for withdrawal of guilty plea (515)** In 1983, Rule 32(e), Fed. R. Crim. P. was amended to permit a defendant to withdraw his plea before sentencing for "any fair and just reason." Despite the rule, the Ninth Circuit continued to apply a higher "manifest injustice" test from a prior version of the rule if the defendant sought to withdraw his plea after a codefendant had been sentenced. See *U.S. v. Ramos*, 923 F.2d 1346, 1358-59 (9th Cir. 1991); *U.S. v. Hoyos*, 892 F.2d 1387, 1400 (9th Cir. 1989) In an opinion written by Judge Hawkins, the en banc Ninth Circuit overruled these cases and held that the "fair and just" standard of Rule 32(e) applies to *any* motion for plea withdrawal made before sentencing. In this case, a codefendant who had been sentenced filed a letter and declaration exonerating defendant. The panel held that the codefendant's declaration may have provided a "fair and just reason" to withdraw the plea, and therefore the case was remanded to the district court to apply the proper standard. *U.S. v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (en banc).

**Standard of review of claim that government breached plea agreement is unsettled. (515)** The Ninth Circuit's standards for reviewing a claim that the government has breached a plea agreement have been inconsistent. See *U.S. v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000) (comparing *U.S. v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) – de novo standard – with *U.S. v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996) – clearly erroneous standard); *U.S. v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999) (same). In this case, the Ninth Circuit said that "[w]e cannot as a panel, nor need we determine which standard governs because we conclude that under either standard the outcome is the same: the government did not breach the plea agreement." *U.S. v. Trapp*, 257 F.3d 1053 (9th Cir. 2001).

**Displeasure with sentence is not "manifest injustice" to allow plea withdrawal. (515)** Upon learning of his sentence, defendant tried to withdraw his plea. After a continuance, the court denied the motion. On appeal, defendant contended he was not sentenced until the second hearing, and that he should have been allowed to withdraw his plea pursuant to Fed. R. Crim. P. 32(e) prior to that sentencing. However, Judge Fisher, joined by Judges Graber and Berzon, found the defendant was sentenced at the first hearing and did not ask to withdraw his plea until he heard the sentence. Withdrawal of a plea after sentencing is not permitted unless a "manifest

injustice" would result. *U.S. v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998). Displeasure with the sentence does not create a "manifest injustice." *U.S. v. King*, 257 F.3d 1013 (9th C. 2001).

**In seeking to withdraw plea for newly discovered evidence, defendant need only show a "fair and just" reason. (515)** Ordinarily under Rule 32, Fed. R. Crim. P. if a motion to withdraw a plea is made before sentencing, the court may permit it to be withdrawn if the defendant shows any "fair and just reason." However, prior Ninth Circuit cases have held that the higher "manifest injustice" standard applies when a defendant seeks to withdraw a plea after a co-defendant has been sentenced. See *U.S. v. Ramos*, 923 F.3d 1346, 1358-59 (9th Cir. 1991). The district court applied this rule to deny defendant's motion to withdraw his guilty plea even though, before sentencing, a co-defendant sent defendant a letter stating his willingness to testify that neither defendant nor another codefendant were involved in the sale of the drugs. On appeal, Judge Hawkins, joined by Judges Schroeder and Fisher reversed, holding that the record indicated that defendant was moving to withdraw his plea only because of this new exculpatory evidence, not because of the co-defendant's sentence. Therefore, the district court should have applied that "fair and just reason" standard. The case was remanded with instructions to permit defendant to withdraw his plea. *U.S. v. Ruiz*, 229 F.3d 1240 (9th Cir. 2000).

**Conditional plea of guilty waives all issues not expressly reserved for appeal. (515)** Judge D.W. Nelson, joined by Judges Kozinski and W. Fletcher, held that defendants waived their right to claim that a military Special Assistant U.S. Attorney had a conflict of interest in prosecuting a case involving theft of government property. However, they failed to preserve this issue in their conditional plea of guilty, because the conflict of interest motion was separate and distinct from their motion to suppress the evidence and dismiss the indictment. Moreover, the district court treated the two motions as separate. Therefore, their conditional plea under Fed. R. Crim. P.(11)(a)(2) failed to preserve this issue and the panel did not consider it on appeal. *U.S. v. Chon*, 210 F.3d 990 (9th Cir. 2000).

**No breach of plea agreement where judge denied government's request to withdraw from it. (515)** The parties entered into a written jury waiver agreement in which the government agreed to recommend the low end of the guideline range. At sentencing however, the prosecutor said he had received new information which "placed the defendant in a different light," and asked permission of the court to withdraw any sentence recommendation. The court responded that "I feel that this whole thing was negotiated based upon a recommendation of low end, and I will impose the sentence as recommended. On appeal, the Ninth Circuit found no breach because "the government grudgingly made a low end recommendation before sentencing occurred and was not allowed to withdraw it." Moreover, unlike *U.S. v. Myers*, 32 F.3d 411 (9th Cir. 1994) and *U.S. v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999), the district court followed the low end recommendation required by the agreement. Thus defendant "received every benefit of the jury waiver agreement and, therefore, has no viable contract claim." *U.S. v. Coleman* 208 F.3d 786 (9th Cir. 2000).

**Non-prosecution agreement in Michigan did not bar Nevada telemarketing prosecution. (515)** Defendant pleaded guilty in Michigan to telemarketing fraud. In the plea agreement, the government agreed "not to charge defendant with any other offenses of which it [was] aware."

However, the agreement also provided that it "does not bind or obligate government entities other than the United States Attorneys Office for the Eastern District of Michigan." Thereafter, defendant was indicted in Nevada for participating in a separate telemarketing fraud operation. His attorney unsuccessfully raised the Michigan non-prosecution agreement as an absolute bar. On appeal, Judge Reinhardt, joined by Judges O'Scannlain and W. Fletcher, agreed that the language in the Michigan agreement was "entirely clear" and did not bar the Nevada prosecution. *U.S. v. Johnston*, 199 F.3d 1037 (9th Cir. 1999).

**Court can permit withdrawal of plea for "any fair and just reason" and has no obligation to reinstate it.** (515) Defendant accepted the government's offer of a conditional plea capping his sentence at 10 years. After the court accepted the guilty plea however, defendant reconsidered and moved to withdraw his plea, which the court granted. Later, after the court held that voluntary intoxication was no defense to the robbery charge in this case, the defendant asked the court to reinstate his guilty plea, but the court declined. Defendant was convicted at trial and sentenced to 17 years. On appeal, Judges Reinhardt, Boochever and Graber found no error. Under Fed. R. Crim. P. 32(e), a court may permit a defendant to withdraw a plea for "any fair and just reason" as long as the sentence has not yet been imposed. There was no merit in defendant's argument that because his decision to withdraw his plea was based on a mistaken interpretation of the law, the district court should have exercised its equitable powers to reinstate the plea agreement. "It is not clear to us that such an action would have been within the district court's power, because the government refused to offer the same bargain at this later date." The court found it unnecessary to reach the issue, because "in any event, the district court is not required to exercise its equitable powers in the manner suggested by the defendant." *U.S. v Burdeau*, 168 F.3d 352 (9th Cir. 1999).

**Defendant is not bound by a guilty plea until it is accepted by the court.** (515) Pursuant to a plea agreement, defendant appeared before a magistrate judge, who conducted a hearing on his proposed plea of guilty to possession with intent to distribute marijuana. After the hearing, the magistrate judge recommended that the district court accept the plea, but the district judge did not immediately act on the recommendation. On these facts, Judges Tashima, Brunetti and Graber held that defendant had an absolute right to withdraw his plea because it had not yet been accepted by the district court. He did not need to show a "fair and just" reason for withdrawing the plea, because "a defendant is not bound by a guilty plea until it is accepted by the court." The court distinguished *U.S. v. Hyde*, 117 S.Ct. 1630 (1997) on the ground that in *Hyde*, the guilty plea – but not the plea agreement – had been accepted by the trial court. *U.S. v. Alvarez-Tautimez*, 160 F.3d 573 (9th Cir. 1998).

**Defendant's attempt to withdraw plea permitted government to oppose acceptance of responsibility.** (515) "Plea agreements are contractual in nature and are measured by contract law standards." *U.S. v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990). The government's failure to move for a substantial assistance departure under § 5K1.1 did not breach the agreement because the written agreement contained no such promise. Moreover, the agreement stated that the government would not recommend an adjustment for acceptance of responsibility if defendant attempted to withdraw his plea. Because he indeed attempted to withdraw his plea, "the government was free to oppose or not recommend the adjustment for acceptance of

responsibility." *U.S. v. Schuman*, 127 F.3d 815 (9th Cir. 1997).



**Counsel's failure to seek a plea bargain "more aggressively" was not in effective. (515)**
Although defense counsel initiated plea negotiations with the prosecutor, the prosecutor refused to offer anything less than first degree murder. Defendant argued that his trial counsel "should have tried harder," submitting a declaration from an attorney stating that it was "customary" for defense attorneys to continue to press for negotiations. Judges Boochever, Kozinski and Noonan held that these "shoulds" and "customary" practices "do not rise to the level of showing that [defense] counsel's performance was deficient." *Aguilar v. Alexander*, 125 F.3d 815 (9th Cir. 1997).

**Government cannot be sole arbiter of plea agreement requiring truthful testimony. (515)**
The government's agreements with cooperating witnesses each contained clauses stating that the witness was to testify truthfully, that if the witness breached the agreement it became void, and that the government retained the exclusive right to determine whether the agreement had been breached. Defendant argued that the agreements violated her right to confrontation because they forced the witnesses to testify to the government's approved version of the "truth." Judges Canby, Rymer and Kleinfeld noted that the district court properly condemned, and said it would not enforce, the clause granting the government the *exclusive* right to determine whether the witness had told the truth. The panel rejected, however, defendant's argument that these agreements so bound the witnesses to the government's version of the "truth" that effective cross-examination was precluded. The witnesses themselves did not testify that they understood that the government was the ultimate arbiter of the truthfulness of their testimony. Moreover defense counsel exploited fully the possible effects of such agreements on the testimony. There was no infringement on the right of cross-examination. *U.S. v. Croft*, 124 F.3d 1109 (9th Cir. 1997).

**Order reinstating dismissed counts after vacating gun counts was appealable before trial.**
**(515)** Defendants filed an interlocutory appeal after the district court ruled that they had breached their plea agreements by collaterally attacking the gun counts after the decision in *Bailey v. U.S.*, 516 U.S. 137 (1995) on the ground that they did not "use" or "carry" the guns within the meaning of 18 U.S.C. § 924(c)(1). Judges Reinhardt, Wright and Thomas held that the court's order was appealable before trial because it came within the "collateral order rule" of *Cohen v. Beneficial Indus. Loan Corp*, 337 U.S. 541 (1949). *See Abney v. U.S.*, 431 U.S. 651, 659-63 (1977). The court's order constituted a complete, formal and final rejection of the defendant's claim and the elements of the claim were "completely independent of guilt or innocence." Moreover, the defendant's rights would be "significantly undermined if appellate review . . . were postponed until after conviction and sentence." Accordingly, the appellate court had jurisdiction under 28 U.S.C. § 1291. The court did not reach the defendant's double jeopardy claim. *U.S. v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997).

**Defendants did not breach plea agreements by collaterally attacking gun counts. (515)** On the fourth day of trial, defendants pled guilty to two gun counts under 18 U.S.C. § 924(c)(1). In return, the government agreed to drop the drug charges and to ask for a ten year sentence, which everyone believed was the mandatory minimum. When it was learned that the mandatory minimum was twenty-five years, the parties agreed that if the district court imposed the ten year

sentences, the government would waive its right to appeal. The court the sentenced the defendants to ten years. Nine months later, the Supreme Court filed its opinion ⌐ *Bailey v. U.S.*, 516 U.S. 137 (1995) holding that the "use" prong of § 924(c)(1) required that tⅼe firearms to be "actively employed." Defendants moved to vacate their convictions under 28 ⌐.S.C. § 2255 on the ground that the conduct to which they had pled guilty was no longer a cⅰ me. The district court vacated the convictions but ruled that defendants had breached their plⅰ a agreements by challenging their convictions and therefore the government was entitled to rⅰ try them on the previously-dismissed drug counts. On appeal, Judges Reinhardt, Wright and Tⅰomas reversed, holding that the collaterally attack was not a breach of the plea agreements. Unⅰ er *U.S. v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) a plea agreement does not waive the right to bring ⌐ § 2255 motion unless it expressly says so. Accordingly, defendants could not be retried and he drug charges were ordered dismissed with prejudice. *U.S. v. Sandoval-Lopez*, 122 F.3d 797 (9tⅰ Cir. 1997).

**Proffer agreement permitted government to use defendant's statements to prepare its witnesses for trial. (515)** Before trial, defendant signed a proffer agreement witⅼ the government in an attempt to obtain a sentence reduction for substantial assistance. The profⅰ r agreement said the government would not use any of defendant's statements in its case in chief or at the time of sentencing. But it said the government could use "information derived directly ⟨ r indirectly from the meeting for the purpose of obtaining and pursuing leads," and any eⅴ dence obtained therefrom could be used to cross-examine defendant or to "rebut any evidencⅰ ' offered by the defendant at trial or at sentencing. Based on this language, Circuit Judges Beeⅰ er and Kozinski and District Judge Ingram upheld the government's use of statements made by defendant in the course of the proffer session to prepare several of its witnesses for trial. "The usⅰ of [defendant's] statements to prepare witnesses is analogous to rebutting defendant's evidence ⌐r pursuing leads to other evidence." *U.S. v. Chiu*, 109 F.3d 624 (9th Cir. 1997).

**State agreement to dismiss charges cannot bind federal authorities. (515)** In an argument raised for the first time on appeal, defendant claimed that the federal governⅰ ent should have been bound by the state's plea agreement not to prosecute on the gun charges. Ⅰ elying on *U.S. v. Cordova-Perez*, 65 F.3d 1552, 1554 (9th Cir. 1995), Circuit Judges Noonan anⅰ Browning and District Judge Merhige rejected this "recasting of the double jeopardy argumeⅰ ⅰt" because "the state can't bind the federal authorities." *U.S. v. Sparks*, 87 F.3d 276 (9th Cir. 19Ⅼ ⅰ).

**Defendant's breach of plea agreement relieved government of its obⅼ gations. (515)** Defendant breached the plea agreement by committing new offenses while awⅰ iting sentencing. Nevertheless, the government permitted sentencing to go forward with the neⅴ criminal activity reflected in the presentence report. On appeal, however, the Ninth Circuit rever ed for a Rule 11 violation. On remand, the district court granted the government's motion tⅽ vacate the plea agreement and defendant was convicted after a jury trial. In this second appeal, ⅰefendant argued that the government waived the breach by failing to move to vacate the plea agⅰⅰ ement before the first sentencing. Judges Alarcon, Kleinfeld and Hawkins ruled that this issue beⅰame moot when defendant's original plea of guilty was vacated on appeal. By its terms, thⅰ plea agreement provided that if the conviction was reversed, the government could prosecute defendant on all charges. The court said it knew of no "principle of contract law that wⅽ uld require the government to perform its obligations pursuant to a plea agreement, following he breach of the

plea agreement by the defendant, and a trial on the merits on all counts." *U.S. v. Salerno,* 81 F.3d 1453 (9th Cir. 1996).

**Dismissal of gun count in plea bargain did not prevent sentence for armed bank robbery.** **(515)** Defendant was charged in separate counts with armed bank robbery in violation of 18 U.S.C. § 2113(a,d) and unlawfully carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1). He entered a no contest plea to the armed bank robbery count in exchange for dismissal of the 924(c) count and another firearms count. At the time of the plea, he stated that he understood the maximum sentence was 25 years. Seven years later, he filed a 28 U.S.C. § 2255 petition arguing that in light of the dismissal of the 924(c) count, his 25-year sentence should be reduced to 20 years—the statutory maximum for *unarmed* bank robbery. Judges Sneed, Skopil and Ferguson rejected the argument, noting that armed bank robbery and § 924(c) are separate offenses. "The fact that [the 924(c)] count was dismissed pursuant to the plea bargain does not negate the fact that he used a dangerous weapon during the robbery pursuant to § 2113(a,d) and pleaded no contest to that charge." *U.S. v. Beierle,* 77 F.3d 1199 (9th Cir. 1996).

**Remand for resentencing following breached plea agreement requires new sentencing judge. (515)** District Judge Hogan and Circuit Judges Hall and Leavy remanded for resentencing before a different judge to insure the specific performance of a plea agreement concededly breached by the original sentence. Although Ninth Circuit cases are split on the necessity for a new sentencing judge following a breached plea agreement, *Santobello v. New York,* 404 U.S. 257, 262-263 (1971) indicated resentencing should take place before a different judge to insure specific performance of a breached plea bargain. *U.S. v. Camper,* 66 F.3d 229 (9th Cir. 1995).

**Plea agreement may be withdrawn any time before court accepts it. (515)** Following *U.S. v. Savage,* 978 F.2d 1136, 1138 (9th Cir. 1992), Judges Canby, Choy and Fernandez held that either party may withdraw its consent to a plea bargain until the bargain is accepted by the court. Because the district court did not follow the magistrate judge's recommendation to accept the guilty plea until it sentenced defendant, it erred in denying defendant's earlier motion to withdraw from the plea bargain. Whether or not defendant had a "fair and just" reason for withdrawing his plea, he was able to do so before the formal acceptance of the plea bargain by the court. *U.S. v. Washman,* 66 F.3d 210 (9th Cir. 1995).

**State plea bargain did not bar federal prosecution. (515)** In a Montana state court, defendant pled guilty to possession of drugs with intent to sell, in exchange for a suspended 10 year sentence and his release to federal immigration officials for deportation. He was then indicted in federal court for unlawful reentry into the United States after deportation following conviction of an aggravated felony. Judges Thompson and Skopil held that the state plea bargain did not bar the federal indictment because the federal government was not a party to the state plea agreement. Even if an INS agent told the state court that defendant would be deported, he did not thereby promise that defendant would not be federally prosecuted. In any event defendant did not show that the INS agent was authorized to bind the U.S. Attorney. Judge Ferguson dissented on other grounds. *U.S. v. Cordova-Perez,* 65 F.3d 1552 (9th Cir. 1995).

**Plea agreement to a lesser offense may be rejected based on presentence report. (515)** Based upon information in the presentence report, the district court rejected defendant's earlier guilty plea to a lesser offense and reinstated the original indictment for unlawful reentry into the U.S. after deportation following conviction of an aggravated felony under 8 U.S.C. § 1326(b)(2). Judges Thompson and Skopil held that the district court did not violate Fed. R. Crim. P. 11(e), nor did it violate Rule 32(b)(3), nor double jeopardy, since the court never said its acceptance of the plea was unconditional. Its silence in accepting the plea did not bar it from deferring its final decision to accept or reject its plea until its review of the presentence report. Judge Ferguson dissented, opining that the district court violated Rule 11(e), Rule 32(b)(3), and double jeopardy, by vacating the plea and reinstating the indictment. *U.S. v. Cordova-Perez*, 65 F.3d 1552 (9th Cir. 1995).

**Court properly found no fair and just reason to permit guilty plea to be withdrawn. (515)** The denial of a motion to withdraw a guilty plea is within the district court's discretion where the defendant does not show a fair and just reason for the withdrawal. Judges Wiggins, Fletcher and Hall held that defendant did not meet his burden here. He did not establish serious doubt of the charged conspiracy, which the district court found by a preponderance of the evidence. His claim that he did not know he could plead guilty to one count and go to trial on the other was belied by the record, which showed that he only moved to withdraw his plea after realizing he was going to receive a heavier sentence than expected. *U.S. v. Alber*, 56 F.3d 1106 (9th Cir. 1995).

**Assurance of concurrent sentence may have been ineffective assistance, but did not violate bargain. (515)** Petitioner claimed that the state prosecutor had agreed in plea negotiations that his state sentence would be served concurrently with any federal sentences he received. Judges Reinhardt and Brunetti found that although the facts in the record "may provide strong evidence of ineffective assistance of counsel, they do not establish that the prosecutor actually entered into an agreement regarding concurrent sentences." Accordingly the case was remanded for further proceedings on the ineffective assistance claim. Judge Fernandez dissented. *Wells v. Maass*, __ F.3d __ 94 D.A.R. 9635 (9th Cir. July 7, 1994) No. 92-36861.

**Defendant cannot raise breach of plea agreement for first time on appeal. (515)** As part of the plea agreement, defendant waived his right to appeal, "if he [was] sentenced pursuant to paragraph 3 of [the] plea agreement." Although he was sentenced pursuant to paragraph 3, he filed a notice of appeal, claiming for the first time on appeal that the government had breached the plea agreement. Judges Hall, Leavy and Fernandez dismissed the appeal, noting that issues not presented in the district court cannot generally be raised for the first time on appeal. A breach of the agreement is the sort of claim that a defendant ordinarily will recognize immediately and should be required to raise when the alleged breach can still be repaired. The court distinguished *U.S. v. Gonzalez*, 16 F.3d 985 (9th Cir. 1994), on the ground that the defendant there did not appeal the government's breach of the plea agreement. *U.S. v. Robertson*, 52 F.3d 789 (9th Cir. 1994).

**Prosecutor's alleged promise to write letter of leniency did not invalidate plea bargain. (515)** Defendant's allegation that his attorney told him the prosecutor would write a letter recommending leniency was insufficient to warrant withdrawal of his guilty plea. The allegation

contradicted his sworn statement to the district court when he pled guilty, as well as defense counsel's testimony at the evidentiary hearing on the withdrawal motion. Speculation that defense counsel might have mistakenly referred to a government promise not to make derivative use of defendant's information was insufficient to justify withdrawal, especially since defendant himself diminished the importance of the promised letter at the evidentiary hearing. *U.S. v. Michlin*, 34 F.3d 896 (9th Cir. 1994).

**9th Circuit clarifies remedy where defendant was deprived of opportunity to accept a plea offer. (515)** The 9th Circuit amended its January 18, 1994, opinion in this case to state that "where as here, the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was in prior to the 6th Amendment violation ordinarily will involve reinstating the original offer." The court added however, that in proper cases, the government could seek to demonstrate that intervening circumstances had so changed the factual premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date. Here, however, the government conceded that if defendant succeeded in his ineffective assistance of counsel claim, it would be appropriate to require the government to reextend the offer of the same plea agreement. *U.S. v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994)

**Reversible error to accept guilty plea before advising defendant of constitutional rights. (515)** After the district court accepted defendant's guilty plea, the government reminded the court it had not informed defendant of his constitutional rights. The district court then advised defendant about his rights and defendant told the court he understood them. The court did not give defendant the opportunity to withdraw his guilty plea or to plead anew. Over a dissent by Judge Leavy, Ninth Circuit Judge Reinhardt and Senior District Judge Merhige concluded that the district court violated Fed. R. Crim. P. 11(c)(3) by failing to advise defendant about his rights until after he pled guilty. The error deprived defendant of a significant protection afforded by the rule -- an explanation of constitutional rights before they are waived. Consequently, the error was not harmless under Rule 11(h). *U.S. v. Gastelum*, 16 F.3d 996 (9th Cir. 1994).

**Plea agreement did not cure failure to advise that sentence recommendation was not binding. (515)** Defendant pled guilty pursuant to a written plea agreement which required the government to recommend a sentence of 10 months. The plea agreement also stated that the court was not bound by the recommendation and that failure to follow the recommendation would not be a basis to withdraw from the agreement. However, at the time of the plea the court did not ask defendant, as required by Fed. R. Crim. P. 11(e)(2), whether he understood that the court was not bound by the recommendation and that he would not be able to withdraw his plea. Judges Goodwin, Wright and Hug found the error was not harmless. There is a marked difference between being warned in open court and reading some boiler-plate language in a plea agreement. *U.S. v. Kennell*, 15 F.3d 134 (9th Cir. 1994).

**California indictment did not violate Texas plea agreement. (515)** The Texas plea agreement provided that in return for Conkins's guilty plea on one substantive charge, a second substantive charge and two conspiracy charges would be dismissed. The agreement contained no mention to a bar to prosecutions for related conduct not charged in that first indictment. After the plea was entered, Conkins and eleven others were indicted in the Eastern District of California. Conkins

was convicted of substantive marijuana charges. On appeal, Judges Pregerson, Hug and Wiggins held that the indictment in the Eastern District of California did not violate the plea agreement defendant entered into in the Western District of Texas. *U.S. v. Conkins*, 9 F.3d 1377 (9th Cir. 1993).

**Ambiguities in plea agreement are construed in favor of the defendant. (515)** The 9th Circuit held that plea agreements are contractual in nature and are measured by contract law standards. In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty. As with other contracts, provisions of plea agreements are occasionally ambiguous; the government "ordinarily must bear responsibility for any lack of clarity." "Construing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and expertise." *U.S. v. De la Fuente*, 8 F.3d 1333 (9th Cir. 1993).

**Defense counsel's failure to bring breach of plea bargain to court's attention was ineffective assistance. (515)** 9th Circuit had no difficulty in concluding that counsel's failure to bring the plea-breach claim to the district court's attention at sentencing constituted ineffective assistance of counsel. There was no dispute as to what counsel did at sentencing, and no conceivable tactical or strategic reason for his failure to raise the plea-breach issue. *U.S. v. De la Fuente*, 8 F.3d 1333 (9th Cir. 1993).

**Under Rule 11, plea agreement cannot be modified by later cooperation agreement without a hearing. (515)** In the plea agreement, the defendant agreed to submit to interviews and to testify truthfully, in return for a downward departure motion by the government. Several months later, defendant signed an acknowledgement that no results had been achieved so far, and noted for the first time her responsibility to provide "substantial assistance" to the government. Thereafter, defendant failed to appear and was re-arrested and convicted. The government refused to move for a downward departure. On appeal, Judges Sneed and Hall reversed, finding that the district court violated the parol evidence rule when it looked at the later "acknowledgement" in finding that defendant had agreed to "cooperate" in the original agreement. Rule 11, Fed. R. Crim. P. requires any modification of the plea agreement to be accepted by the court. The sentence was vacated and the district court was instructed to hold a Rule 11 hearing to determine whether the acknowledgement was a valid modification of the plea agreement. Judge Wallace dissented. *U.S. v. Floyd*, 1 F.3d 867 (9th Cir. 1993).

**Plea bargains are contracts. (515)** Judges Goodwin, Noonan and T. G. Nelson said it is "axiomatic" that plea bargains are "contractual in nature." "Plea bargaining, in other words, though a matter of criminal jurisprudence, is subject to contract law standards. Therefore the terms of the agreement, if disputed, are to be determined by objective standards." A court must determine what was reasonably understood by the parties to be the terms of the agreement. The court held that in this case the plea agreement bound the government to silence only during the original sentencing proceedings, not during the subsequent probation revocation hearing. *U.S. v. Gerace*, 997 F.2d 1293 (9th Cir. 1993).

**Defendant entitled to have plea agreement presented to judge despite government's**

mistake. (515) Defendant agreed to plead guilty in separate cases pending before Judges Pfaelzer and Tevrizian. After the plea was accepted by Judge Pfaelzer, the government realized it had made a mistake, and asked to have the plea set aside. Judge Pfaelzer correctly ruled that under *U.S. v. Partida-Parra*, 859 F.2d 629 (9th Cir. 1988), the defendant was entitled to specific performance despite the government's mistake. Judge Tevrizian, who had not accepted the plea, denied defendant's motion to enforce the plea, and defendant was convicted of several drug offenses. On appeal, Judges Canby, Ferguson and Thompson vacated the sentence and remanded to permit the plea agreement to be presented to Judge Tevrizian. The court noted the possibility that Judge Tevrizian may have rejected the plea agreement even if the government had presented it to him. Nevertheless, on remand, the Judge may "choose to effectuate the plea agreement, vacate one or more of [defendant's] convictions, or modify his sentence." *U. . v. Fagan*, 996 F.2d 1009 (9th Cir. 1993).

**Denial of motion to withdraw plea was proper where evidence showed defendant was competent. (515)** Defendant had neurological damage from a 1985 motorcycle accident. Before he pled guilty, two doctors examined him and found he was unable, without assistance, to form complex plans and bring them to fruition. Another doctor found however, that he was competent to enter into a plea agreement. Later, three doctors at the federal medical center in Rochester, Minn. found him capable of rationally understanding and entering into the plea agreement when he did. In denying defendant's motion to withdraw his plea, the district court relied on the reports of the various doctors, the transcript of the plea hearing, the undercover agent's testimony that defendant had been detailed and responsive in various meetings, videotapes and audiotapes showing defendant's dominance of conversations, and finally the judge's observations of defendant as he gave testimony before him. Judge Sneed and Chief Judge Wallace and Judge Hall found no abuse of discretion. *U.S. v. Myers*, 993 F.2d 713 (9th Cir. 1993).

**Judge improperly participated in plea bargaining by prospective refusal to permit any "deals." (515)** When setting defendant's trial date over the strenuous objection of defense counsel, the district court noted defendant had turned down a plea bargain, admonished the government to make no further deals and advised that the court would accept nothing less than a plea to the entire 30 count indictment. Judges Fletcher, Browning and Schroeder found defendant's ultimate guilty plea to the government's offer involuntary and the district court's comments and attempt at control an improper participation in the plea bargaining process. While a defendant has no constitutional right to plea bargain, the district court's ex ante rejection of any "deals" was an abuse of discretion in violation of the absolute prohibition in Fed. R. Crim. P. 11(e)(1) against court participation in plea negotiation. *U.S. v. Anderson*, 993 F.2d 1435 (9th Cir. 1993).

**Plea stipulation requiring choice between honesty to defendant and disclosure to Parole Commission required remand. (515)** The plea agreement stipulated that the quantity of cocaine was less than 5 kilos, that there would be no minimum mandatory sentence, and the sentence would be "paroleable." However, the presentence report accurately stated that the scheme involved more than 18 kilograms of cocaine. To avoid the discrepancy in the amount of drugs, the district court ordered the PSR to be amended before it was sent to the U.S. Parole Commission. Nevertheless, both versions of the PSR were received by the Parole Commission,

which asked the AUSA to explain the discrepancy. The AUSA responded that 13 kilograms was the correct amount, and said the government would oppose parole. On appeal the 9th Circuit expressed its disappointment that "the government may have placed itself between the rock of disclosure to the Parole Commission and the hard place of honesty in its dealings with the defendant." The court found the plea agreement ambiguous, and remanded the case for the district court to decide what obligations the agreement imposed on the government. *U.S. v. Anderson*, 970 F.2d 602 (9th Cir. 1992), *amended*, 990 F.2d 1163 (9th Cir. 1993)

**Petitioner repudiated partially-performed plea agreement by requesting trial date. (515)** Petitioner was convicted in Oregon state court of aggravated murder and sentenced to life imprisonment with a minimum of 30 years to serve. Petitioner had entered into a plea agreement with the state to (1) provide information, (2) testify at the trial of the individual who allegedly hired him to commit a murder, and (3) plead guilty to murder, in exchange for which the state would agree to a 10 year minimum term before parole eligibility. The state court found even though petitioner partially performed by providing information and testimony, he relieved the state of further obligation under the agreement by requesting a trial date. On appeal from denial of federal habeas relief, Circuit Judge Kleinfeld and District Judge Legge found the state court's construction of the plea agreement fell within "the broad bounds of reasonableness" and the federal court could not substitute an independent federal interpretation. Judge Pregerson dissented. *King v. Brown*, 8 F.2d 1403 (9th Cir. 1993).

**Court refuses to review prosecutor's plea bargaining discretion. (515)** Defendant pled guilty to conspiracy to distribute a controlled substance and seven substantive counts of distribution. He argued that the prosecution impermissibly refused to offer a favorable plea bargain. Judges Goodwin, Norris and Rymer found the record did not support a claim of selective prosecution and that there could be no inquiry into the alleged arbitrariness of the decision to prosecute. There is no constitutional right to a plea bargain and the decision whether to offer a plea bargain is a matter of prosecutorial discretion. *U.S. v. Sustaita*, 1 F.2d 950 (9th Cir. 1993).

**No credible reason to withdraw guilty plea shown. (515)** Defendant argued that he pled guilty solely because he was afraid that his lawyer was more concerned about getting paid and would not defend him properly if he insisted on going to trial. Circuit Judges Kozinski and Thompson and District Judge Von Der Heydt found no "fair and just reason" to allow the guilty plea to be withdrawn where the district court made credibility determinations contrary to the defendant's allegations. The district court did not abuse its discretion in refusing to let the defendant change his plea. *U.S. v. Snider*, 976 F.2d 1249 (9th Cir. 1992).

**Confession pursuant to cooperation agreement was involuntary where it was conditioned on passing a polygraph exam. (515)** Defendant entered into a plea agreement in which he agreed to cooperate fully. The agreement was contingent upon his passing a polygraph examination. Thereafter, he cooperated in the investigation for approximately ten weeks, before failing a polygraph exam. The plea was withdrawn and he was remanded for trial. At trial, over objection, the government introduced the statements defendant had made to DEA agents while cooperating. On appeal, Judges D. W. Nelson, Alarcon and Canby reversed, ruling that defendant's statements were given involuntarily. "The fact that a confession was given as a

required element of a plea bargain may alone be sufficient to render the confession legally involuntary and inadmissible at a subsequent trial." The defendant could not confess in an exercise of his "rational intellect and free will" when the results of the polygraph exam were beyond his control and unreliable. Accordingly it was plain error to admit the confession at trial. *U.S. v. Escamilla*, 975 F.2d 568 (9th Cir. 1992).

**Withdrawal of plea agreement results in suppression of confession made while cooperating. (515)** The plea agreement required defendant to truthfully cooperate, and it was contingent on his passing a polygraph exam. Pursuant to the plea agreement, defendant confessed to the agents, but later failed a polygraph exam. In light of the failure, the plea was withdrawn. At trial, the government introduced defendant's confession, but on appeal, Judges D.W. Nelson, Alarcon and Canby reversed. The court said that by introducing the confession at trial, "the government has retained the benefit it received under the agreement, while denying [defendant] his side of the bargain." Moreover, "the terms of the plea bargain itself simply do not contemplate the use of [defendant's] confession against him at trial." To the extent that the bargain mentioned defendant's confession at all, it stated that it would not be used against him. Although the agreement could have been drafted differently, the admission of the confession in this case violated the plea agreement. *U.S. v. Escamilla*, 975 F.2d 568 (9th Cir. 1992).

**Failure to impose bargained-for sentence under Rule 11(e)(1)(C) required reversal. (515)** The plea agreement expressly stated that it was pursuant to Rule 11(e)(1)(C), Fed. R. Crim. P., which requires the court to impose the agreed-upon sentence or to reject the guilty plea. At sentencing, the government took the position that the defendant had failed to live up to his obligation to cooperate under the plea agreement and that this failure rendered paragraph 5, but not the entire plea agreement, null and void. The district judge agreed, and imposed a sentence greater than the sentence agreed upon in the plea agreement. On appeal, Judges Hug, Poole and Canby reversed, noting that under Rule 11(e)(1)(C) and U.S.S.G. section 6B1.3 the district judge was required either to accept the plea agreement and sentence accordingly or to reject the plea agreement and allow the defendant to withdraw his guilty plea. The conviction was reversed. *U.S. v. Fernandez*, 960 F.2d 771 (9th Cir. 1992).

**Applying Taylor retroactively did not violate plea agreement. (515)** The defendant appealed his sentence under the Armed Career Criminal Act, 18 U.S.C. section 924(e)(1), and the 9th Circuit deferred ruling pending the Supreme Court's decision in *Taylor v. U.S.*, 110 S.Ct. 2143 (1990). Defendant conceded that *Taylor* was decided adversely to him, but argued that applying *Taylor* retroactively to him would contravene the plea agreement. Judges Wright and Fernandez rejected the argument, stating that defendant "was well aware at the time of sentencing that the government sought to enhance his sentence and would expect to appeal the district court's refusal to do so." Judge Tang dissented, arguing that the court ought at least to remand for the district court to consider whether the defendant relied on the inapplicability of the Armed Career Criminal Act when entering his plea. *U.S. v. Argo*, 925 F.2d 1133 (9th Cir. 1991).

**Attempt to withdraw plea after codefendant was sentenced, came too late. (515)** Judges O'Scannlain, Nelson and Brunetti noted that "in the usual case district court judges freely allow the withdrawal of guilty pleas before sentencing. Here although the defendant attempted to

withdraw his plea before he was sentenced, the request came only after the sentencing of his wife and a co-defendant. The appellant court found no injustice in refusing to allow him to withdraw his plea. "Permitting defendants to plead guilty to test the weight of potential punishment and then to withdraw the plea if the sentence were unexpectedly severe, would 'undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process.'" The court found no abuse of discretion. *U.S. v. Ramos*, 923 F.2d 1346 (9th Cir. 1991).

**Refusal to accept conditional plea which would preserve outrageous misconduct defense was not improper. (515)** Judges Beezer, Wallace and Farris found no impropriety in the prosecutor's and the judge's refusal to permit the defendant to enter a conditional plea. They noted that the defendant had no constitutional right to a plea bargain. "A forced choice between asserting a constitutional right at trial and accepting the government's offer, while undoubtedly difficult, is not unconstitutional." *U.S. v. Montilla*, 870 F.2d 549 (9th Cir. 1989), *amended* 907 F.2d 115 (9th Cir. 1990).

**Motion to withdraw guilty plea was properly denied after one co-defendant was sentenced and another was acquitted. (515)** An attempt to withdraw a guilty plea before sentencing, but after a co-defendant has been sentenced "is akin to that of a defendant who seeks to withdraw his plea after sentencing." Here the motion to withdraw was filed after defendant had learned that one of his codefendants, who pleaded guilty, had been sentenced to 10 years and another, who had gone to trial, had been found not guilty. Judges Alarcon, Wallace and Beezer held that the district court did not abuse its discretion in denying the motion to withdraw the guilty plea. *U.S. v. Hoyos*, 892 F.2d 1387 (9th Cir. 1989).

**Government's silence at sentencing did not breach plea agreement to support defendant's recommendation. (515)** In the plea agreement, the government agreed to support a defense request that the court recommend that defendant serve his time in a federal prison in California. At sentencing, the government said nothing. Judges Noonan, Farris and Leavy held that "[i]t was not plainly erroneous for the district court to find as fact that, in context, the government's silence was support." The trial court "was familiar with the plea agreement," and the prosecutor's explicit endorsement "would have had little, if any, effect on the sentencing judge." *U.S. v. Knockum*, 881 F.2d 730 (9th Cir. 1989).

**Fear of harsh sentence, standing alone, is no basis for withdrawal of plea. (515)** Judges Wallace, Farris and Beezer ruled that fear of receiving a harsh sentence, standing alone, does not constitute a "fair and just" reason for withdrawing a plea. Nor does an inaccurate prediction of sentence or parole render a plea involuntary. *Shah v. U.S.*, 878 F.2d 1156 (9th Cir. 1989).

**Prosecutor's bare statement that defendant had cooperated did not fulfill plea agreement. (515)** The plea agreement obligated the government to inform the sentencing court of all of defendant's cooperation with the authorities. At sentencing, defense counsel referred generally to several acts of cooperation. The prosecutor did not directly respond, but acknowledged that the defendant had been "cooperating in helping prosecute the coconspirators." Judges Wright, Norris and Wiggins held that "the prosecutor's bare statement that [the defendant] had cooperated did not fulfill the government's obligation under the plea agreement." The prosecutor did not adopt

defense counsel's recitation nor did he supply any details about the defendant's cooperation. *U.S. v. Fisch*, 863 F.2d 690 (9th Cir. 1988).

**Court has no power to "rescind" plea agreement after it is accepted, despite government's mistake. (515)** By mistake at a trial setting hearing, the government presented a superseding information charging a misdemeanor rather than a felony. The court accepted the plea, pursuant to Rule 11, Fed. R. Crim. P., but when it was later advised of the government's mistake, the court set aside the plea. Defendant was tried and convicted of the felony and was sentenced to 10 years. On appeal, Judges Fletcher and Hug reversed the conviction, holding that neither Rule 11 nor the "common law" of plea agreements permits a judge to undo or "rescind" the parties' obligations under a plea agreement because of the government's mistake. Judge Farris dissented, stating that the government's "unilateral mistake" was sufficient to justify rescission of the plea agreement. *U.S. v. Partida-Parra*, 859 F.2d 629 (9th Cir. 1988).

**Existence and terms of plea agreement -- standard of review. (515)** What the parties agreed to in any given case is preeminently a question of fact, to be resolved by the district court. The inquiry in this case, whether agents of the Secret Service promised the defendant probation, "turns principally upon an assessment of the credibility of the various witnesses, an issue best resolved by the court in the 'superior position' to make such determinations." Accordingly, Judges Tang, Farris and Kozinski held that the district court's findings as to the existence and terms of the plea agreement were reviewed for "clear error." *U.S. v. Helmandollar*, 852 F.2d 498 (9th Cir. 1988).

**Agents' violations of defendant's rights did not shift burden of proving existence of plea agreement. (515)** Despite defendant's repeated requests for counsel, the Secret Service agents "willfully and deliberately" refused to provide counsel, and also failed to take him without unnecessary delay before the nearest available federal magistrate. Judges Tang, Farris and Kozinski found it "disturbing" that the agents continued their investigation despite *Miranda* in the name of a "greater good," i.e. recovery of millions of dollars in counterfeit currency. Nevertheless, no fruits of these violations were used by the government, and the court declined to shift the burden of proving the existence or non-existence of a plea agreement as a remedy for the violation of defendant's rights. The court upheld the trial court's finding that the agents did not promise defendant that he would receive probation in exchange for his cooperation. *U.S. v. Helmandollar*, 852 F.2d 498 (9th Cir. 1988).

**Government's recommendation for restitution did not breach plea agreement. (515)** Even though the plea agreement was silent with respect to sentencing, the defendant argued that the government's request for $180,000 in restitution (subsequently reduced to $64,249) amounted to a material change in the plea agreement. Chief Judge Browning and Judges Alarcon and Norris rejected the argument, noting that defendant had been advised that he faced a potential $500,000 fine by pleading guilty. Since the agreement was silent as to restitution, the government's recommendation did not breach its terms. *U.S. v. Pomazi*, 851 F.2d 244 (9th Cir. 1988).

**Prosecutor cannot appeal from order permitting withdrawal of guilty plea, even in Guam. (515)** In *U.S. v. Martin*, 611 F.2d 260 (9th Cir. 1979) the Ninth Circuit held that an order permitting withdrawal of a guilty plea is an "interlocutory step in criminal proceedings," and

therefore is not appealable by the prosecution under 18 U.S.C. § 3731. Despite he efforts of the Guam prosecutor to find authority for such an appeal in Guam statutes, Judges Reinhardt, Wallace and Noonan held that the same rule applies to Guam. The governmnt's appeal was dismissed. *People of Territory of Guam v. Estrebor,* 848 F.2d 1014 (9th Cir. 198 ).

**No abuse of discretion in refusing to permit defendant to withdraw his guilty plea. (515)** After hearing highly incriminating testimony, defendant pleaded guilty in the midle of trial to mail fraud, tax evasion and filing false documents. At sentencing, however, he moved to withdraw his plea, claiming his retained counsel had told him that a guilty plea may be withdrwn as of right at any time, notwithstanding a statement in the written plea agreement that there was no absolute right to withdraw the guilty plea. Third Circuit Judge Aldisert, sitting by designation, and Ninth Circuit Judges Wallace and Schroeder found no abuse of discretion in the district court's refusal to set aside the plea. The district court properly rejected defendant's unsworn assertion that counsel had essentially told him it was "proper to lie under oath to the judge in order to enter the plea and thereafter change his plea with impunity." *U.S. v. Signori,* 844 F.2d 635 (9th Cir. 1988).

**Imposition of death sentence after judge had approved a plea bargain calling for a prison sentence was not unconstitutional. (515)** Two and a half weeks before trial the trial judge approved a plea bargain allowing defendant to plead guilty to two offenses in exchange for a fifty-year sentence. The prosecutors, however, had the impression that the bargai was contingent upon the approval of the victim's family, and five days later, before defendant actually pleaded guilty, they advised defense counsel that the victim's family had not approved and there would be no deal. The *en banc* Ninth Circuit, per Kozinski, J., upheld that the trial court's refusal to accept the guilty plea, noting that there is "no constitutional right to plead guilty to lsser crimes than those charged." Moreover, the subsequent imposition of the death penalty after trial did not violate the defendant's constitutional rights. Judges Fletcher, Pregerson, Caby and Norris dissented. *McKenzie v. Risley,* 842 F.2d 1525 (9th Cir. 1988) (*en banc*).

**Prisoner's failure to allege breach of plea agreement until 14 months after sentencing justified denial of 2255 petition without a hearing. (515)** In his § 2255 motion to vacate his sentence, defendant alleged that his lawyer had told him that the prosecutor had promised that his sentence would be light and his wife would not serve time in prison. In fact, he was sentenced to life and his wife got 10 years. Nevertheless, he waited until 14 months after the sentence to raise this issue, despite filing a rule 35 motion and writing two letters to the judge. Under the circumstances, Judges Browning, Wright and Leavy held that the trial judge was justified in denying the 2255 motion based on the affidavits from defense counsel and the prosecutor, interrogatories of the defendant and his wife, the record of the plea hearing, and the other documents. Although the case turned on credibility, live testimony from the defendants was not necessary. *Watts v. U.S.,* 841 F.2d 275 (9th Cir. 1988).

**"Change of heart" does not justify permitting defendant to withdraw guilty plea. (515)** The decision to permit or deny withdrawal of a guilty plea is within the district court's sound discretion. Thus, Judges Schroeder, Nelson and Norris note that "this court has not overturned denial of a motion to withdraw a guilty plea absent something more than the defendant's change of mind." The court rejects the argument that as long as there is no prejudice to the government, the

district court should permit presentence withdrawal of a guilty plea whenever the defendant has a "good faith change of heart." *U.S. v. Rios-Ortiz*, 830 F.2d 1067 (9th Cir. 1987).

**Court abused its discretion in denying motion to withdraw guilty plea when defendant did not knowingly and intelligently waive his right to counsel. (515)** Before a waiver of counsel can be considered knowing and intelligent, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation. Here, Judge Nelson, with Judges Kozinski and Hall concurring, found that the district court abused its discretion in denying the defendant's pro se motion to withdraw his guilty plea. The district court did not specifically discuss these elements with defendant at the hearing on his motion to appear pro se nor were there additional facts to show he was adequately apprised by another source or had a sufficient background and experience in legal matters to understand the risks of self-representation. Moreover, the court held that the harmless error analysis was inappropriate since defendant was denied his right to counsel at both the hearing on the motion to withdraw his guilty plea and the sentencing hearing. *U.S. v. Balough*, 820 F.2d 1485 (9th Cir. 1987).

**Even if defendant's attorney incompetently misinformed him as to the nature of the plea bargain, defendant failed to show prejudice. (515)** Defendant claimed that his attorney erroneously told him that his sentences on all four counts would run concurrently. Relying on *Chua Han Mow v. U.S.*, 730 F.2d 1308 (9th Cir. 1984), Judges Brunetti, Alarcon and Noonan held that defendant failed to show prejudice because he acknowledged that the plea agreement only included concurrent sentences on counts I and II, and he said he was satisfied with his attorney. *U.S. v. Rubalcaba*, 811 F.2d 491 (9th Cir. 1987).

**Filing additional charges after plea did not violate plea agreement. (515)** In return for defendant's plea, the government agreed not to file "any charges against the Defendant based on conduct known to the government." Since the government's later charges were based on facts which became known after the plea agreement, they did not violate the plea agreement. *U.S. v. Sutton*, 794 F.2d 1415 (9th Cir. 1986).

**No showing that prosecutor falsely induced plea bargain. (515)** Defendant claimed that he was led to plead guilty by the prosecutor's false statement that six or seven witnesses would testify as to defendant's drug activities.. But he failed to show that, at the time the statements were made, the witnesses were not then available to testify. *U.S. v. Baker*, 790 F.2d 1437 (9th Cir. 1986).

**After sentencing, a plea may be set aside only on direct appeal or by a 2255 motion. (515)** Former rule 32(d), which permitted a defendant to move to set aside his plea to correct manifest injustice," was amended in 1983, and now permits a plea to be set aside only on direct appeal or by a motion under 28 U.S.C. § 2255. Thus the district court had no jurisdiction to entertain the defendant's motion. *U.S. v. Baker*, 790 F.2d 1437 (9th Cir. 1986).

**Petition for reduction in sentence for alleged violation of plea agreement was properly denied without an evidentiary hearing. (515)** Defendant's claim that he was induced to sign the

plea agreement by oral promises by the government that it would obtain his release from prison and use him in an undercover capacity was patently frivolous. On its face, the agreement did not provide for such actions. Accordingly, defendant had no right to an evidentiary hearing on his § 2255 petition. *U.S. v. Quan*, 789 F.2d 711 (9th Cir. 1986).

**Court failed to comply with plea agreement. (515)** The defendant entered a guilty plea for three counts of his indictment in return for the maximum sentence imposed by the court to be three years or less, with full credit for time served since October 11, 1983. However, the court required him to make restitution and not reenter the U.S. The court held that the plea agreement was breached. *U.S. v. Kamer*, 781 F.2d 1380 (9th Cir. 1986).

**Government's parole recommendation did not violate plea agreement as to sentencing. (515)** Government's recommendation that parole not be granted until maximum sentence was served did not violate a plea agreement promising not to make recommendations concerning sentencing. Sentencing is a separate and distinct function from parole which is handled by the Parole Commission. *U.S. v. Clark*, 781 F.2d 730 (9th Cir. 1986).

**Government properly provided information to the court subsequent to the plea agreement. (515)** The court did not abuse its discretion in denying defendant's motion to withdraw her guilty plea to wire fraud. The plea agreement did not obligate the government to withhold information concerning events subsequent to defendant's conviction of which sentencing judge could not be aware from a review of the record. *U.S. v. Read*, 778 F.2d 1437 (9th Cir. 1985).

**No breach of plea agreement by government despite vague language. (515)** As part of a plea agreement, the government agreed "to take no position on what sentence should be imposed," but it did advise that an FBI investigation of defendant's activities in Palm Springs was proceeding, and that it "reserved the right to respond to questions from the court." Thereafter, by letter, the government advised the court of criminal activities engaged in by the defendant after her plea and conviction. The Court of Appeals criticizes the government for the vague language in the plea agreement, but finds no violation of the agreement. Defendant "could not have reasonably understood the plea agreement to include a promise to withhold such information." *U.S. v. Read*, 778 F.2d 1437 (9th Cir. 1985).

**Prosecutor's statements made plea agreement unclear. (515)** Prosecutor orally stated the terms of the plea agreement differently than he had done in the written agreement. Thus, even though the prosecutor's statements at sentencing did not violate the terms of the written agreement, an evidentiary hearing should have been held to determine whether prosecutor's oral statements modified the written agreement. *U.S. v. Arellanes*, 767 F.2d 1353 (9th Cir. 1985).

**Withdrawal of guilty plea is reviewed for abuse of discretion. (515)** A trial court's denial of motion to withdraw guilty plea is reviewed for abuse of discretion. Defendant's claim that he did not know that the judge, as a matter of policy, would not grant probation in these types of cases was an insufficient showing. He was told by his attorney that probation was possible, but was fully informed of the maximum penalties and that the sentence was entirely up to the judge. *U.S. v. Johnson*, 760 F.2d 1025 (9th Cir. 1985).

**Prosecutor breached plea agreement to stand mute at sentencing. (515)** Cor rary to the plea bargain, the prosecutor failed to keep his promise to only recommend a "sub; tantial period of incarceration," and to otherwise "stand mute" at sentencing. The sentence ' as vacated and remanded for resentencing to the same judge. *U.S. v. Travis,* 735 F.2d 1129 (9th Cir. 1984).

**Withdrawal of guilty plea after time to appeal has run. (515)** No abuse of discretion in refusing to set aside guilty plea after time to appeal had run because defenda t failed to show "manifest injustice" under Rule 32(d) or 28 U.S.C. § 2255. Extensive discussio of burdens and standards for informing defendant of the nature of the charges, the minimum sp cial parole term, allegations that defendant was misled by counsel, and the factual basis for the pl a. *U.S. v. Rivera-Ramirez,* 715 F.2d 453 (9th Cir. 1983).